# COMPLAINT FORM

(for filers who are prisoners without lawyers)

(revised 4/19/2022)

IN THE UNITED STATES DISTRICT COURT
FOR THE Southern DISTRICT OF Indiana

(Full name of plaintiff(s))

Sajjad Qaiyim Rasheed
#170842

v.

(Full name of defendant(s))

Pendleton Corr. Facility
Warden Reagle etc.

**FILED**
**01/02/2025**
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

Case Number:

2:25-cv-004-MPB-MKK

(to be supplied by clerk of court)

A. PARTIES

1. Plaintiff is a citizen of __Indiana__, and is located at
(State)

   __Wabash Corr. Facility 6908 S. Old US Hwy 41 Carlisle, In. 47838__
   (Address of prison or jail)

(If more than one plaintiff is filing, use another piece of paper).

2. Defendant __Warden Reagle__
(Name)

| Defendant's Name | Job Title / Government |
|---|---|
| 1.) Warden Reagle | Warden of P.C.F |
| 2.) A. Smith | assist Warden of P.C.F |
| 3.) J.D Ballinger | classification |
| 4.) P. Dixon | Supervisor of Classification |
| 5.) Lt. Jackson | Lieutenant of G-cellhouse at P.C.F |
| 6.) Cpt. Ernest | Captain of G-cellhouse at P.C.F |
| 7.) ofc. Bishop | Head of Property in G-cellhouse at P.C.F |
| 8.) V. Osburn | N.P of Centurion Health at P.C.F |
| 9.) ofc. Goodnight | Case Mngr./Counselor at P.C.F |

Work Address of Defendants

4490 W. Reformatory Rd.
Pendleton, Indiana 46064


Warden Reagle was the designated and appointed acting Warden at Pendleton Corr. Facility. It was his duty and responsibility to oversee, monitor and manage all of the day to day operations of the facility. All defendants herein acted under the color of State Law and are being sued in their individual and official capacities.

is (if a person or private corporation) a citizen of _Pendleton, Indiana._
                                                                                                       (State, if known)
and (if a person) resides at _4490 W. Reformitory Rd. Pendleton In. 46064_
                                                                                                          (Address, if known)
and (if the defendant harmed you while doing the defendant's job)

worked for _Indiana Dept. of Corrections_
                                                                          (Employer's name and address, if known)

(If you need to list more defendants, use another piece of paper.)

B.    STATEMENT OF CLAIM

On the space provided on the following pages, tell:
1. Who violated your rights;
2. What each defendant did;
3. When they did it;
4. Where it happened; and
5. Why they did it, if you know.

1) Warden Reagle violated Rasheeds 8th and 14th Amendment rights by causing Rasheed to remain housed in solitary confinement for over 4 months past his scheduled release date while awaiting institutional transfer. Rasheed believes Warden Reagles decision to allow him to remain in solitary confinement violated his right to Due Process, raises both liberty and property deprivation issues and subjected him to cruel + unusual punishment and inhumane conditions of confinement

2) Warden Reagle also acted with 'Deliberate Indifference'. Rasheed wrote several letters to Warden Reagles office detailing the nature of his situation including the events and facts leading up to his confinement in RHU. In those letters, Rasheed spoke of being wrongfully held in RHU, mistreatment by staff and the inhumane living conditions

he was being forced to endure day in + day out. (see exibits)

3.) Rasheed also filed numerous grievances, classification appeals and letters to several classification officers of high rank that worked with Warden Reagle everyday. Rasheed's family members (wife and sister) called his office, spoke to his assistant warden A. Smith about the matter and left several messages but Warden Reagle never responded to the efforts made to establish clarity or remedy. (see exibits)

4.) A. Smith was the acting Director of Classification and also the acting Assistant Warden at P.C.F. It was his duty to oversee, supervise and manage classification concerns required of his position within the facility during the time of Rasheed's wrongful confinement in the Restrictive Housing Unit at P.C.F.

5.) A. Smith violated Rasheed's 8th and 14th Amend. rights to Due Process, acted with deliberate indifference, did not help protect Rasheed's liberty interest and allowed him to be subjected to cruel + unusual punishment by allowing Rasheed to remain housed in solitary confinement pending transfer for over 4 months past his scheduled release date despite being made fully aware of Rasheed's case and the conditions he faced on a daily basis.

6. V. Osburn - N.P of Centurion Health violated Rasheed's 8th amend. rights and subjected him to cruel and unusual punishment when they failed to provide immediate health care. Rasheed alleges that medical staff demonstrated professional disregard, continue

Complaint - 3

Continued
4. Parties

B.

Name of Defendant's

| | |
|---|---|
| Warden Reagle | Warden of Pendleton Corr. Facility |
| A. Smith | Assist. Warden at Pendleton Corr. Facility |
| J.D Ballinger | Classification at P.C.F |
| P. Dixon | Superviser of Classification at P.C.F |
| Lt. Jackson | Lieutenant of G-cellhouse at P.C.F |
| Captain Ernest | Captain at P.C.F in G-cellhouse |
| Ofc. Bishop | Head of Property in G-cellhouse at P.C.F |
| V. Osburn | N.P of Centurion Healthcare at P.C.F |
| Ofc. Goodnight | Case Mngr / Counselor in G-cellhouse at P.C.F |

Continued B.

.. and acted with deliberate indifference by refusing to provide treatment in the form of medication/ medical attention despite being made fully aware of Rasheed's medical needs by way of numerous healthcare request submitted by Rasheed (see exibits)

7) Medical Staff made no effort to provide medical attention until Rasheeds wife desperately contacted 'Central Office' for emergency assistance. It was then + only then that Rasheed was rushed to the medical unit at P.C.F. By the time Rasheed was seen, his blood pressure was so high that he had entered the "Stroke Trouble Zone" and he had to be given special medicine to immediately lower his blood pressure levels. Rasheed then had to be monitored for a extended period of time before he could be released and returned to his cell in the RHU in G-cellhouse.

8) J.D Ballinger was the appointed, qualified and acting superviser of classification at P.C.F He was by duty assigned to Rasheed's case and one of the primary decision makers regarding his housing inside the facility as well as any transfers outside of the facility. Upon being served papers, Rasheeds immediately filed a 'Classification Appeal' challenging his current classification and transfer but Rasheeds Appeal was denied by Ballinger. (see exibits)        continued

) J.D Ballinger violated Rasheeds 8th and 14th amend. rights by allowing him to remain housed in segregation pending transfer to another facility. In Rasheed's classification Appeal, Rasheed stated that by being forced to remain housed in RHU was a direct violation of his const. rights as a prisoner. Rasheed stated that his conduct, credit class nor the nature of his offense fit the criteria to classify him as a threat to inmates nor the safty and the security of the facility (see exibits)

9.) Ballinger acted with deliberate indifference. Rasheed also stated in his 'classification Appeal' that by being ~~transferred~~ forced to remain in segregation past his scheduled release date subjected him to cruel and unusual punishment caused by inhumane living conditions and deprivations that were contributing to mental and physical health problems but yet he failed to assist Rasheed in providing any necessary remedy.

11.) Paula Dixon was the appointed, qualified and acting Head of Classification at P.C.F. It was her duty to monitor, manage all classifications and issues pertaining to operational concerns required of her position.

12.) Rasheed wrote P. Dixon asking her why was he being held in segregation pending transfer for 2 class C (372) fighting conduct offenses. Rasheed expressed to Dixon that due to the nature of his case, conduct history, security level and credit class, he did not fit the criteria to be deemed a threat to the safety of inmates nor the safety and security of the facility. Rasheed further stated that his 8th and 14th Amend. rights were being violated by classifications decision to keep him housed in segregation despite him serving the time he was given to do which was 30 days, (15 days apiece for each conduct offense).

13.) Rasheed also expressed that by being transferred to another facility only puts further distance between his family and friends/support system and himself. This would compromise relationships and potentially extremely damaging to his mental health. Rasheeds standing within the 'PIUS PROGRAM' as a participant, mentor and facilitator provided income, a sense of purpose as well as motivation to better himself as evidenced by over 4yrs of clear conduct continued

prior to 8-30-22.

4.) By allowing Rasheed to remain housed in segregation pending transfer demonstrated deliberate indifference, subjected him to cruel and unusual punishment due to inhumane living conditions and continuous mistreatment by staff and lack of adequate healthcare/attention which were flagrant violations of his constitutional rights under the 8th and 14th Amendment.

5.) Lieutenant Jackson was the appointed, qualified and acting Lieutenant at Pendleton Corr. Facility. Lt. Jackson was assigned to operate and manage the 'Restrictive Housing Unit' in G-cellhouse on a day to day basis.

6.) Lt. Jackson violated Rasheeds 8th and 14th Amend. rights when he acted with deliberate indifference when he failed to correct the conduct of officers in G-cellhouse despite being present during particular incidents of mistreatment and misconduct and failing to provide reasonable living conditions while Rasheed was being wrongfully within his unit and under his supervision.

7.) Captain Ernest was the appointed, qualified and acting Captain at Pendleton Corr. Facility. Cpt. Ernest was also assigned to supervise, operate and manage the 'Restrictive Housing Unit' located in G-cellhouse on a day to day basis.

8.) Cpt. Ernest acted with deliberate indifference and subjected Rasheed to cruel and unusual punishment violating Rasheeds 8th and 14th Amend. rights when he was made fully aware of the mistreatment by officers under his supervision and failing to provide reasonable living conditions for Rasheed while he was being housed in the 'Restrictive Housing Unit' located in G-cellhouse at Pendleton Corr. Facility

19.) Property Officer Bishop was the appointed, qualified and acting 'Head of Property' in the 'restrictive housing unit' in G-cellhouse at P.C.F. It was his duty to operate and manage the Property office/storage room. It was also his job and responsibility to distribute inmate property that was being stored in the property room and allowed to inmates being housed in G-cellhouse.

continued→

20.) Property Officer Bishop violated Rasheeds 14th Amend. rights to Due Process when he failed to provide him his property including necessary legalwork/case documents, eye glasses and medical items. Rasheed submitted over seven request forms to Ofc. Bishop asking him for his property and Rasheed also spoke to Bishop face to face about the matter. During these conversations Ofc. Bishop gave Rasheed his word that he would deliver the property requested but even after 4 months he never did. Rasheed opted to mail his property home in fear of it being lost or mishandled during the institutional transfer process.

21.) Officer Goodnight was the appointed, qualified and acting         (see exibits) Case manager/counselor in the 'Restrictive Housing Unit' at Pendleton Corr. Facility located in G-cellhouse. It was his duty to assist inmates in their day to day needs while they were being housed in RHU in G-cellhouse. Ofc. Goodnight was also the case manager assigned to Rasheed.

22.) Counselor Goodnight violated Rasheeds 1st, 8th and 14th Amend. rights when he failed to turn in numerous grievances Rasheed personally turned into Goodnight to be sent to the Grievance Dept. These grievances were about the inhumane living conditions, the mistreatment by officers, lack of medical attention and Rasheeds wrongful confinement in RHU/segregation pending transfer.

23.) Goodnight and Rasheed butted heads on many occasions about his failure to do his job in numerous capacities. Goodnight did not assist Rasheed with getting healthcare when he complained of being unwell. He did not assist in providing cleaning supplies requested by Rasheed and other inmates. He did nothing to help change the inhumane living conditions, help retain Rasheeds legalwork/property, did not assist Rasheed in being released from RHU and he failed to provide meaningful 30 day reviews.

24.) Goodnight and Rasheed had a heated conversation when Rasheed complained to him about not hearing anything about the many grievances he had given him to turn in and Rasheed refusing to sign another meaningless 30 day review. It was at this time that Ofc. Goodnight told Rasheed that "if it was up to me, you would be back here until a new administration took over".

C.  JURISDICTION

[✓] I am suing for a violation of federal law under 28 U.S.C. § 1331.
    OR
[ ] I am suing under state law. The state citizenship of the plaintiff(s) is (are) different from the state citizenship of every defendant, and the amount of money at stake in this case (not counting interest and costs) is $_____.

D.  RELIEF WANTED

Describe what you want the court to do if you win your lawsuit. Examples may include an award of money or an order telling defendants to do something or stop doing something.

Wherefore, Plaintiff Rasheed requests this Honorable Court to grant the following relief:

A. Issue Declaratory Judgment that defendants did in fact violate plaintiff's rights as stated in the body of this complaint.

B. Grant Compensatory Damages in the following amounts:

i.) $125.00 for each day that plaintiff Rasheed was unjustly and illegally held in solitary confinement without meaningful monthly reviews from: Warden Reagle, A. Smith, J.D Ballinger, P. Dixon, Lt. Jackson, Cpt. Ernest, Case Mngr. Goodnight and V. Osburn of Centurion Health.

C. Grant Punitive Damages of the maximum allowable amount against each of the defendants for mental/emotional stress.

D. Immediate transfer to a level 3-4 prison closer to Gary, Indiana.

E. Grant any such other relief that this court deem fair and just.

E.   JURY DEMAND

☑   Jury Demand - I want a jury to hear my case
        OR

☐   Court Trial – I want a judge to hear my case

Dated this __7__ day of __December__ 20 _24_.

Respectfully Submitted,

_____
Signature of Plaintiff

__170842__
Plaintiff's Prisoner ID Number

__Wabash Valley Corr. Facility - 6908 S. Old Hwy 41__
__Carlisle, Indiana, 47838__
(Mailing Address of Plaintiff)

(If more than one plaintiff, use another piece of paper).

F.   **OPTIONAL CERTIFICATION**

Under penalty of perjury, I declare that the facts alleged in this complaint are true and correct to the best of my knowledge and belief.

_____
Signature of Plaintiff

**REQUEST TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING THE**

## FILING FEE

☑ I **DO** request that I be allowed to file this complaint without paying the filing fee. I have completed a request to proceed in the district court without prepaying the fee and attached it to the complaint.

☐ I **DO NOT** request that I be allowed to file this complaint without prepaying the filing fee under 28 U.S.C. § 1915, and I have included the full filing fee with this complaint.

## FACTS LEADING UP TO COMPLAINT

On 8-29-22, Rasheed was housed in O-Dorm at Pendleton Corr. Facility which was PCF's current 'PLUS PROGRAM' location. Rasheed had just graduated the program and asked to stay on as hired facilitator. Rasheed's job role required him to mentor other participants in the community, volunteer at various jobs throughout the facility when needed and teach classes facilitating the 'PLUS PROGRAMS' curriculum. However, that afternoon an altercation transpired between 2 inmates and Rasheed one after another. The first fight happened in the restroom within the dorm where Rasheed was attacked by offender Kevin Franklin. A short while afterwards offender Tony Fields and Rasheed got into an arguement an offender Fields attacked Rasheed inside of Rasheed's bed area. The yard officers were called and as a result all 3 offenders were taken to the Restrictive Housing Unit located in G-cellhouse at Pendleton Corr. Facility.

Upon Rasheed's arrival in G-cellhouse, he was placed in a shakedown booth, stripped out, searched and escorted to cell 5-1C. Once Rasheed was placed inside the cell, Rasheed began to notice that it had not been cleaned after the last person had left. There were feces smeared over the walls, the cell smelled horrible, the floor was covered with different kinds of filth, ants were crawling around, flies were flying around, mice dropping were under the bed/bunk, the toilet was stinking and covered with brown slime on the inside, the sink had black worms inside the drain, the hot water did not get hot and came out brown unless you ran it for at least 5-6 minutes and the front bars and door was covered with juice, particles of food, dirt, and what appeared to be fecal matter. Rasheed immediately began asking for cleaning supplies to clean the cell but was denied and then completely ignored and disregarded all together. When the P.M shift came on, Rasheed was still refused proper cleaning supplies. Rasheed had to clean with whatever he could. (Rasheeds toilet would often overflow without warning spilling contaminated human waste all over the floor. Officers would still deny proper cleaning supplies to Rasheed.)

Later on that same evening, Rasheed was brought a bag of whites containing 2 pair of boxers, 2 t-shirts, 2 pair of socks, 2 sheets, 2 cotton blankets and a dirty well used mattress.

runs at this time, Rasheed asked the officer "why was there no cleaning supplies available and what was wrong with the vent" the officer said "this is lock-up, not the Ritz" and walked off.

As the days went by Rasheed noticed that officers never cleaned the ranges properly, barely came on the ranges to do their walks, didn't respond to the inmates request to see them unless they said it was an emergency. Even then, it would take the effort of multiple offenders getting involved in calling for the C/O's or by offenders kicking the doors. Officers would make fun of inmates when they would tell them that they were feeling suicidal. If offenders get angry at officers not responding in a timely manner and express their frustrations, officers would cut their power off inside their cells for hours leaving offenders screaming and kicking the doors trying to get their power turned back on. In many cases officers would tell the shift coming on not to turn certain inmates power back on at all and inmates may not have power for over 24 hrs.

In the summer months, temperatures inside the cell house would far exceed the temperatures outside. With no air conditioning, inmates were left to suffer unbearable heat. It was almost impossible to sleep until well after midnight when the temperature was at its coolest. Rasheed had to take his socks off everyday and pour water on his t-shirt and boxers constantly throughout the day just to try to keep cool. Many days, Rasheed would place a sheet on the concrete floor and lay down in only his underwear in an attempt to be cooler. The vent inside his cell did not work at all and everyday was miserable.

The noise level inside the cell house was constantly intolerable. All day long inmates would be screaming, kicking the doors and arguing with other offenders and officers. You had to scream just to talk to the person in the cell next to you. Rasheed had to either fashion his own earplugs out of tissue or plastic or buy foam earplugs off commissary.

Rasheed had to wait until the cellhouse was at its calmest point in order to try to make phone call. The continuous use of earplugs caused ear infections and left Rasheeds ears sore for days.

The officers would try to avoid the needs of the offenders by coming on the ranges during the times most inmates are sleeping and they would do so very quietly and whisper into your cell. At 6:00 A.M, many inmates are trying to sleep and with earplugs wedged inside your ears, hearing the counselors or officers was almost impossible. On recreation and shower days, you had to stay up after breakfast around 4:30 A.M until they (officers) could change shifts at 6:00 A.M in order to receive a shower or be able to go to recreation. If an inmate wakes up after the officer passes your cell you would be denied a shower or miss recreation. It doesn't matter if the officer is at the cell right next door to you. On many occassions officers would try to bribe offenders by offering them a sack lunch or extra food items in order for them to not to go to the shower or recreation. Some times the officers would ask if you want recreation or a shower and make you choose between one or the other even though offenders are supposed to be able to have both. Rasheed was forced to use handicap showers with standing water that was filthy despite protest even though other showers were available. Rasheed informed Lt. Jackson that he was being forced to shower in someone elses filth or not be able to shower at all but Jackson provided no remedy. All the showers were dirty most of the times and Rasheed sufferred numerous fungal problems including ringworm and athletes feet at several different times during the months spent in G-cellhouse. Rasheeds wife had to contact central office about the mistreatment Rasheed had been receiving and in order for Rasheed to receive treatment or to make officers change their conduct. Rasheed was also left in the shower for extended periods of times that could be for well over an hour. During the summer months, this kind of neglect could cause serious health complications. It

...ld be so hot and suffocating that you would have to place your mouth up to the mesh ...en of the shower door or place your face up to the handcuff port for air to prevent ...sing out. When Rasheed would protest to be removed from the shower, in most cases ...officers would leave you in there even longer before coming to get you out.

    In the winter months, the temperature would be so cold you could see your ...n breath. Inmates on lockup are not allowed thermals, sweats nor coats. You are ...a t-shirt and boxers year round with only 2 thin state issued blankets for ...armth. The heat in most inmates cells did not work including Rasheeds. It ...as impossible to sleep esp. at night. Protests for heat was a nonstop thing. ...nmates had to barricade and cover the front of their cells from top to bottom ...efforts to keep cold air out and body heat in. Rasheed would run in place ...r do jumping jax just to try to warm up before lying down. It would be ...o cold that at any moment an inmate would scream out for hours demanding something ...be done about the heat. Rasheeds cell was so cold on some days that ice would ...fail to even melt. Rasheed complained to Lt. Jackson, Capt. Ernest, caseworkers ...and any officer that walked the range. The officers had on coats, gloves, ...skull caps while the inmates were wearing t-shirts and boxers. When the ...ood would be delivered, the officers would allow the trays to sit by the front doors for hours before serving them causing food to be unreasonably cold by the time inmates are able to eat. This caused more protest and disruption on a daily basis. When inmates would opt to go to recreation during the winter months, officers would often leave you out there for longer than they would during warmer months. I believe this was not unintentional. They were trying to make inmates not want to go to rec in order to lessen their work load. The mental games played and carried out by officers every day could only be recognized and identified as cruel and unusual punishment.

5.

The inhumane conditions inmates were forced to endure on a daily basis caused Rasheed to experience severe bouts of depression. Rasheed began to contact mental health in order to get help to figure out what was going with him. After several request, Rasheed was seen by a doctor. Rasheed was so emotional explaining what he had been going through that he actually broke down to tears during the session. Not knowing when he would be transferred caused intense anxiety. Inmates can go years before they are transferred to a different facility and the thought of having to endure such stressful and harsh conditions for a unknown length of time was unbearable and Rasheed contiplated suicide often. Rasheed had lost a total of 17 lbs during the 124 days he had spent in the Restrictive Housing Unit in G-cellhouse at Pendleton Corr. Facility by the time he was transferred to Wabash Valley Corr. Facility.

While Rasheed was being held in Restrictive Housing he filed numerous Grievances in which he made copies of before giving them to the Case Workers Goodnight and Knotts. In most cases Rasheed would fail to get a response on particular grievances and when he would write Ofc. Watson in the Grievance Dept. asking why, he would be told that certain Grievances in question were never received. Rasheed then became aware that counselor Goodnight and Knotts had not been turning them in like they had been entrusted to do.

Every month the counselor or case worker are supposed to provide inmates with a meaningful review if you are being housed in Disciplinary/Restrictive Housing Units. One of the purposes of these reviews is to update and inform offenders of their status. Rasheed was never given a "meaningful review" during his time being held in segregation/Restrictive Housing. Every review that Rasheed received said the same thing as all the others. (It should be noted that Rasheed never received any conduct reports during the 124 days spent on lockup for any offense).

"6."

Particle Pollution posed serious health concerns during Rasheeds unjust extended stay Restrictive Housing/lock up. During the entire time Rasheed was in G-House, there were ongoing daily renovations being carried out. These renovations involved welding, cutting and grinding of metal. Soon as the work started being done, you first be able to hear the loud sound of metal being moved around. Next you would hear the sound of welding and grinding followed by the strong smell of welding fumes. The smoke and fumes would mix together and travel through the air until it eventually filled the entire building with dirty black smoke. The smoke was so toxic that many inmates would began coughing including Rasheed. Rasheed had to wrap cloth around his face to keep the soot and fumes out of his mouth and nose. If this was not done, a black film would accumulate inside of his nostrils and mouth causing coughing and intense nasal irritation. The same black sooty film would cover everything inside your cell including inmates entire bodies. No kinds of protection was offered or passed out to inmates despite daily protest. The constant smoke inhalation caused Rasheed respiratory discomfort throughout his segregation confinement. (The smoke would also cause intense headaches).

Inmates would also start fires on the ranges burning everything from clothing, paper, mattresses and plastic trays. This was done to protest or get the officers attention. This poisonous smoke would also fill your nostrils and cell with black soot causing coughing and respiratory damage and discomfort. Nothing still was given or offered to provide remedy to inmates being housed within the building unit. This only added to the inhumane living conditions Rasheed was being forced to endure by being held unfairly and unjustly in "Restrictive Housing" or "lock-up" for months past his sanctioned and scheduled release date pending transfer to another facility.

7.

Mentally ill inmates were being housed amongst inmates without any mental health issues - behavioral history. These same inmates were responsible for most assaults on other inmates and staff included.

During Rasheeds time on RHU in G-Cellhouse, he was housed directly next to or in close proximity to inmates who spent their time by argueing with staff or other inmates. These inmates would sling feces, urine, food and other things at their neighbors or officers walking the ranges. Rasheed was housed for weeks next door to a very racist, filthy and disrespectful white supremist that didn't have anything better to do than focus on disrespecting blacks, women nurses and other officers.

Rasheed informed the staff including Lt. Jackson, Capt. Ernest and case mngr. Goodnight about his neighbor kicking his wall to keep Rasheed from sleeping, slinging fluids and feces at his cell, setting fires, and calling Rasheed and several other inmates of color every racist name imaginable. Even after witnessing many of the acts displayed by the offender, Officers allowed him to remain housed next door to Rasheed to continue his behavior. Staff never cleaned the bodily fluids or feces he threw on a daily basis from off the range or walls. It wasn't until the inmate threw something on a officer that he was removed from the cell he occupied next door to Rasheed. Weeks of torture had already passed.

Covid-19 and water contamination were also serious issues at Pendleton Corr. facility. There were different occasions that Rasheed had gotten sick on RHU and had complained to Lt. Jackson, Capt. Ernest and Goodnight that he may have gotten exposed to something but they failed to notify medical.

8.

Rasheed was told to speak to the nurses when they made their rounds or submit a medical request. Rasheed filed numerous health care forms but got no response from medical regarding his symptoms or what could be done to help him. Rasheed then began to file Grievances about not being seen by medical but got no responses on the Grievances. It had became clear that staff were screening the outgoing mail and doing something with it cause no one was getting seen but so many inmates were getting sick. (while Rasheed was being housed in the Restrictive Housing Unit in G-cell house, he was given an expired Covid-19 Booster shot. It wasn't until Rasheed arrived at Wabash Valley Corr Facility that he was informed of the expired vaccine and made to sign paperwork about it.)

Since Rasheed arrived at WVCF he has had ongoing health issues and given numerous blood, urine and fecal test. He has also been prescribed several different medications for these health issues.

Sayjad Masheed #[illegible]
Wabash Valley Corr. Facility
6908 S. Old US Hwy 41
Carlisle, In. 47838

CERTIFIED MAIL
9589 0710 5270 0402 3702 96

ZIP 47838 $013.26⁰
0000389598 DEC 26. 2024

**FILED**
JAN 02 2025
U.S. DISTRICT COURT
INDIANAPOLIS, INDIANA

c/o United States District Court
(Southern District of Indiana)
46 E. Ohio St.
Indpls, In. 46204

-Legal-

-Legal-